U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

June 26, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Hannah Warren
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| BRITTNEY L. L.,[1] | ) | Civil Action No. 7:25-cv-00271 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | REPORT & |
| v. | ) | RECOMMENDATION |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | By: C. Kailani Memmer |
| Defendant. | ) | United States Magistrate Judge |

Plaintiff Brittney L. L. (Plaintiff), by counsel, filed this action challenging the Commissioner of Social Security's (Commissioner) final decision finding her not disabled and therefore ineligible for supplemental security income (SSI) and disability insurance benefits (DIB). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party has requested oral argument, nor will oral argument aid in the decisional process. Thus, this case is ripe for decision.

Having considered the administrative record, the parties' filings, and the applicable law, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be reversed and remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In reviewing the merits of the Commissioner's final decision, judicial review is limited to assessing whether the administrative law judge (ALJ) applied the correct legal

---

[1] Due to privacy concerns, I use only the first name and initials of the claimant in Social Security opinions.

1

standards and whether substantial evidence supports the ALJ's factual findings. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citation modified); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [courts] do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)).

Further, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). ALJs must not only reach a conclusion supported by substantial evidence but must also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95.

## CLAIM HISTORY

Brittney was born in 1987. R. 289. As for her education, she completed two years of community college. R. 332. On August 31, 2021, Brittney applied for DIB, and she alleged a disability onset date of December 31, 2016. R. 289. On October 5, 2021, Brittney applied for SSI, and she alleged a disability onset date of December 31, 2016. R. 291. On March 12, 2022, Brittney's DIB and SSI claims were denied. R. 206, 212. On August 26, 2022, her DIB and SSI claims were denied upon reconsideration. R. 219, 224. On October 30, 2022, Brittney requested an ALJ hearing. R. 226. On December 6, 2023, the ALJ held

2

a telephonic hearing, and Brittney was represented by counsel. R. 48. Ms. Linda Dezack testified as a vocational expert. R. 86-94.

On February 24, 2024, the ALJ issued a "Partially Favorable" decision analyzing Brittney's claims under the familiar five-step process,[2] finding her not under a disability— for DIB purposes—from December 31, 2016, through March 31, 2020. R. 35-36. However, the ALJ found Brittney was under a disability—for SSI purposes—from August 30, 2021, through the date of decision. R. 36.

At the first step, the ALJ found Brittney was not engaged in substantial gainful activity since December 31, 2016. R. 22. At the second step, the ALJ found Brittney had the following severe impairments: (1) lumbar spine and cervical spine degenerative disc disease with past surgery undertaken, (2) asthma, (3) obesity, (4) polycystic ovarian syndrome, (5) ulcerative colitis, (6) migraine disorder, (7) attention deficit/hyperactivity disorder/attention deficit disorder, and (8) major depressive disorder.[3] R. 23. Also, at the

---

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to the claimant's past relevant work; and if not, (5) whether the claimant can perform other work. *Johnson v. Barnhart*, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. *Oakes v. Kijakazi*, 70 F.4th 207, 211 (4th Cir. 2023) (citing *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017)). At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

[3] In the Diagnostic and Statistical Manual of Mental Disorders, major depressive disorder is explained as "'a depressed mood, a marked reduction of interest or pleasure in virtually all activities, or both, lasting for at least 2 weeks.'" *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 348 (4th Cir. 2023) (quoting *Stedman's Medical Dictionary* 238320 (28th ed. 2014)). For a patient to meet the diagnostic criteria for major depressive episode, "three or more of the following symptoms must exist: gain or loss of weight, increased or decreased sleep, increased or decreased level of psychomotor activity, fatigue, feelings of guilt or worthlessness, diminished ability to concentrate, and recurring thoughts of death or suicide." *Id.* (quoting *Stedman's Medical Dictionary* 238320 (28th ed. 2014)) (internal quotation marks omitted) (cleaned up). Major depressive disorder "'causes a persistent feeling of sadness and loss of interest . . . it affects how you feel, think and behave.'" *Shelley C.*, 61 F.4th at 361 (quoting *Mayo Clinic, Depression*

second step, the ALJ found Brittney had the following severe impairments since August 30, 2021: (1) left ankle injury, (2) bladder pain syndrome and overactive bladder, (4) onset of cataracts, (5) anxiety disorder, and (6) panic disorder. *Id*. At the third step, the ALJ found Brittney did not have an impairment or combination of impairments that, individually or in combination, meet or medically equal the severity of one of the listed impairments. *Id*.

The ALJ concluded that from December 31, 2016, through August 30, 2021, Brittney had the RFC to perform light work[4] with the following limitations:

> The claimant had to avoid all hazards such as moving machinery and unprotected heights. She could never crawl or climb ladders, ropes, or scaffolds, and could occasionally kneel, crouch, and climb stairs and steps. The claimant could frequently, but not constantly, reach, handle, finger, and feel bilaterally. She has to avoid exposure to strong respiratory irritants such as smoke, fumes, gases, and chemical odors. Cognition and ability to concentrate, persist, and maintain pace was adequate for jobs that could be learned in thirty to forty-five days maximum in a job requiring no public interaction. The claimant may fall off task apart from regularly scheduled breaks at a rate of five to ten percent.

---

*(major depressive disorder) Symptoms & Causes* (Oct. 14, 2022), https://www.mayoclinic.org/diseases-conditions/depression/symptoms-causes/syc-20356007 (last viewed Jan. 18, 2023)).

[4] Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

R. 26. The ALJ then determined that from August 30, 2021, through February 26, 2024, Brittney had the RFC to perform sedentary work[5] with the following limitations:

> The claimant has to avoid all hazards such as moving machinery and unprotected heights. She can never crawl or climb ladders, ropes, or scaffolds, and can occasionally kneel, crouch, and climb stairs and steps. The claimant can frequently, but not constantly, reach, handle, finger, and feel bilaterally. She has to avoid exposure to strong respiratory irritants such as smoke, fumes, gases, and chemical odors. Cognition and ability to concentrate, persist, and maintain pace are adequate for jobs that can be learned in thirty to forty-five days maximum in a job requiring no public interaction. The claimant may fall off task apart from regularly scheduled breaks at a rate of five to ten percent. She requires a sit/stand option at will. The claimant will be absent in excess of two days a month on average.

R. 31. At the fourth step, the ALJ found Brittney was unable to perform any past relevant work since December 31, 2016. R. 33. At the fifth step, based on Ms. Dezack's testimony, the ALJ identified the following jobs, which exist in significant numbers in the national economy, that Brittney could perform before August 30, 2021: (1) non-postal mail clerk, (2) ticketer, and (3) inspector and hand packager. R. 33–34.

For Brittney's DIB claim, the ALJ found her not disabled through March 31, 2020, the date she was last insured. R. 35. However, for Brittney's SSI claim, the ALJ found her disabled since August 30, 2021. R. 36.

---

[5] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

Because this court writes primarily for the parties who are familiar with the facts, the court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Analysis section below.

## ANALYSIS

Brittney asserts numerous arguments as to why the ALJ's decision warrants remand. As discussed below, the court finds the ALJ erred by considering objective medical evidence in discounting Brittney's symptoms of her depression. Accordingly, the court will not address Brittney's additional arguments.[6]

### I.    The ALJ erred by considering objective medical evidence in discounting Brittney's symptoms of major depressive disorder

An ALJ evaluates a claimant's symptoms in a two-step process. At the first step, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also* SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). At the second step, the ALJ evaluates the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult or to function independently and appropriately. *Id*. At the second step, "there need not be objective evidence of the pain [or symptoms] itself or its intensity." *Arakas*, 983 F.3d at 95. Such requirement is because "'symptoms cannot always be measured objectively

---

[6] However, upon remand, the ALJ should examine all of Brittney's arguments and re-evaluate the evidence as a whole. *See Hancock v. Barnhart*, 206 F.Supp.2d 757, 763 n.3 (W.D. Va. 2002) (noting the ALJ's prior decision has no preclusive effect, as it is vacated, and the new hearing is conducted de novo).

through clinical or laboratory diagnostic techniques.'" *Id*. (quoting SSR 16-3p, 2016 WL 1119029, at *4.)

The term "objective medical evidence" is defined as "signs, laboratory findings, or both." 20 C.F.R. §§ 404.1502(f), 416.902(k). "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. §§ 404.1502(g), 416.902(k). Importantly, mental status examinations are considered objective medical evidence. *See Mariah C. v. O'Malley*, No. 1:23-CV-0811 (LRV), 2024 WL 3092407, at *10 n.10 (E.D. Va. June 20, 2024) (noting mental status examinations are objective medical evidence that provide medical signs of mental impairments); *see also Britt v. Berryhill*, No. 1:18-CV-00030-FDW, 2018 WL 6268211, at *4 (W.D.N.C. Nov. 30, 2018) (noting the "ALJ evaluated the objective medical evidence, including mental status examinations"). Symptoms of depression include "'clear-cut changes in affect, cognition, and neurovegetative functions and *interepisode remissions*,' which are characterized by 'pervasive unhappiness and misery.'" *Shelley C.*, 61 F.4th at 367 (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 177, 184 (5th ed. 2013)) (emphasis original).

"[A]n ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 96); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Rather, and with the restriction discussed below, the ALJ is

required to balance the record evidence because "[a] report of . . . inconsistencies in the objective medical evidence is one of the many factors . . . consider[ed] in evaluating" this prong. *Shelley C.*, 61 F.4th at 360 (quoting SSR 16-3p, 2016 WL 1119029, at *5).

However, the Fourth Circuit has recognized that, for certain impairments, such as fibromyalgia, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints" because such impairments do not typically produce objective indicators of limiting symptoms. *Arakas*, 983 F.3d at 97–98 (emphasis added) (holding that ALJs cannot discount subjective complaints of fibromyalgia based on objective medical evidence). After *Arakas*, in *Shelley C.*, the Fourth Circuit extended this reasoning to depression holding that it "is one of those other diseases" that does not produce objective medical evidence. *Shelley C.*, 61 F.4th at 360–61.[7]

That said, to clarify, *Arakas* and *Shelley C.* do <u>not</u> prohibit ALJs from "weigh[ing] a plaintiff's subjective complaints against other evidence in the record, such as by comparing a plaintiff's hearing testimony to her previous statements, including those made during medical visits with her primary care provider and her statements regarding her activities of daily living. . . . Such weighing remains permissible under *Shelley C.* and *Arakas*." *Crystal G. v. Frank Bisignano, Comm'r, Soc. Sec. Admin.*, No. CV 25-0771-DRM, 2026 WL 785043, at *3 (D. Md. Mar. 20, 2026) (citation modified); *see also*

---

[7] Courts within the Fourth Circuit have further expanded the reasoning in *Arakas* and *Shelley C.* to illnesses other than fibromyalgia and depression, including anxiety, bipolar disorder, PTSD, schizoaffective disorder, and neurocognitive disorder. *See Billy D. v. Comm'r, Soc. Sec. Admin.*, No. 4:25-CV-00037, 2026 WL 1602932, at *1 (W.D. Va. June 4, 2026) (applying *Arakas* and *Shelley C.* to case involving anxiety, depression, bipolar disorder, PTSD, and schizoaffective disorder); *Lonnell J. v. Bisignano*, No. 24-3673-DRM, 2026 WL 693344, at *4 (D. Md. Mar. 12, 2026) ("[T]he Court finds that Plaintiff's medically determinable impairment [of] 'depressive, bipolar, and related disorders[ ]' ... falls within *Shelley C.*'s extension of the *Arakas* holding.").

*Kimberly S. v. Comm'r Soc. Sec.*, No. EA-23-1404, 2024 WL 5007372, at *7 (D. Md. Dec. 3, 2024) (ALJ's finding that plaintiff's "own subjective reports of improvement [of depression symptoms] with treatment and independent daily activities were inconsistent with the disabling limitations she alleged" was not impermissible reliance on absence of objective medical evidence).

Here, the record reflects that Brittney was diagnosed with major depressive disorder which the ALJ recognized as a severe impairment. R. 23. As a result, the ALJ could not rely on objective medical evidence as a factor in discounting Brittney's subjective complaints regarding her symptoms of depression. However, the ALJ relied upon objective medical evidence to discount Brittney's complaints regarding the intensity and persistence of her depression symptoms.

At step two of the two-step symptom evaluation, the ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to August 30, 2021." R. 31. Prior to such finding, the ALJ discounted Brittney's symptoms regarding her depression based upon normal mental status examinations. *See* R. 28 ("[S]ome examinations showed a depressed or anxious mood with a blunted affect. However, other examinations in 2019 were normal.") R. 29 (discounting Brittney's symptoms by noting "there are very few abnormal mental health findings"; noting medical providers "often noted the claimant was pleasant, cooperative, and in no distress [and] did not observe the claimant to have serious deficiencies in eye contact, speech, or conversation . . . did not observe that the claimant was overly distractible or slow"; noting "there are very few abnormal mental health findings."); R. 30 (noting Brittney "appeared depressed" at a

9

medical appointment but discounted her depressive symptoms noting "her insight was good, her judgment was fair, thought content was appropriate, and speech was normal."). While the ALJ recognized Brittney's subjective complaints regarding her symptoms of depression, the ALJ simultaneously discounted her symptoms in part based on objective medical evidence. As a result, the ALJ erred by considering this evidence, even as one of multiple factors, to discount Brittney's symptoms of her depression. As such, in accordance with *Arakas* and *Shelley C.*, remand is warranted.[8]

## CONCLUSION

For the above reasons, I respectfully recommend to the presiding District Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

---

[8] Courts have often ordered remand because an ALJ relied on objective evidence as a factor to discount symptoms of depression. *See Billy D.*, 2026 WL 1602932, at *1 (remanding, in part, due to ALJ's consideration of objective medical evidence in discounting claimant's mental health impairments, including depression); *Smith v. Bisignano*, No. CV CJC-25-0803, 2026 WL 672779, at *3–4 (D. Md. Mar. 10, 2026) (finding the ALJ erred in discounting claimant's depression symptoms by considering objective medical evidence); *Ari T. v. Dudek*, No. 2:23-cv-686, 2025 WL 963057, at *7–9 (E.D. Va. Mar. 31, 2025) (same).

Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

Entered: June 26, 2026

C. Kailani Memmer
United States Magistrate Judge